UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

*In re*:

ZACHERY R. LEAVER,

    Debtor.

Case Number: 21-10905-12

---

### DECISION

The issue before the Court is whether an entitlement to administrative expenses in a Chapter 12 bankruptcy carry over to a subsequent bankruptcy proceeding after voluntary dismissal of the initial proceeding where the right to the administrative expenses accrued. For the reasons outlined below, this Court holds that they do not carry over.

#### JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(a). Venue is proper under 28 U.S.C. §§ 1408 and 1409. The issue before the Court relates to an allowance of administrative expenses pursuant to 11 U.S.C. § 503. It falls within the parameters of "allowance or disallowance of claims against the estate," as well as "matters concerning the administration of the estate" and "other proceedings affecting the liquidation of the assets of the estate." 28 U.S.C. § 157(b)(2)(A), (B), and (O).

#### BACKGROUND

The facts are not in dispute. On April 21, 2020, Debtor Zachery Leaver ("Leaver") filed his first Chapter 12 petition *("Leaver I")* for relief in the Western

District of Wisconsin. In response, Hillside Dairy, LLC ("Hillside") filed a secured claim of $106,448.84 for a boarding lien against Debtor's dairy cows and youngstock in Hillside's possession as of the initial petition date of *Leaver I*. On or about July 29, 2020, Hillside and Leaver entered into a stipulation (the "Stipulation"). Soon after, the Stipulation was approved by this Court. Under the Stipulation, Hillside was to "release any animals in its possession owned by" Leaver. In exchange, Hillside was to retain any lien rights in Leaver's animals that were kept and raised by Hillside. Debtor also agreed to treat any outstanding bill by Hillside Dairy as an administrative expense in his Chapter 12 plan. Hillside released the livestock around May 20, 2020. Leaver, however, later challenged Hillside's secured status and administrative priority.

Concerning the dispute around the Stipulation, this Court issued a decision on March 24, 2021, holding that Hillside relinquished its secured claim when it surrendered possession of the cattle. The Court also concluded Hillside was entitled to an administrative expense claim both for its post-petition expense claims and the portion of its claim relating to prepetition expenses that met the requirements of 11 U.S.C. § 503(b) ("*Leaver I* Decision").[1] The amount of the administrative expense claim, though, was subject to further hearing and determination on Hillside's prepetition claims.

---

[1] Although the case giving rise to the Court's March 2021 decision is referred to in this decision as *Leaver I*, it was actually the second Chapter 12 filed by the Debtor. The first, filed in 2018, had a plan confirmed but, in January 2020, was dismissed after Debtor defaulted under that plan.

2

Main Document      Page 3 of 12

The same day the Court issued the *Leaver I* Decision, secured creditor Wisconsin Bank & Trust moved to dismiss *Leaver I* on the grounds that a Chapter 12 plan was not feasible. The next day, Debtor also moved to voluntarily dismiss the Chapter 12 proceeding, and the case was dismissed. About a month later, on April 27, 2021, Debtor commenced the current Chapter 12 proceeding *("Leaver II")*.

In this case, Hillside reasserts the administrative claim granted in *Leaver I*. It filed a Motion for Allowance of Administrative Expense Pursuant to 11 U.S.C. § 503(b)(3)(B) and (b)(9).[2] Leaver objected. Hillside argues its administrative claim survived dismissal of *Leaver I*. Leaver, on the other hand, believes Hillside's administrative claims from a prior bankruptcy do not carry over to the subsequent bankruptcy filing. Hillside submitted an amended proof of claim for administrative expenses totaling $106,448.84.

## DISCUSSION

### *Effect of Dismissal*

There is no provision in the Bankruptcy Code that explicitly governs whether administrative expense claims from a previously dismissed bankruptcy filing are carried over and treated as administrative expense claims in subsequent filings. 11 U.S.C. § 349, however, discusses the effects of a dismissal of a bankruptcy case generally. Section 349 states as follows:

---

[2] In Hillside's Reply brief filed at ECF No. 91, it stated that "sections 503(b)(3)(B) and 503(b)(9) were incorrectly stated in Hillside's motion. Notwithstanding the foregoing, Hillside asserted 11 U.S.C. § 105 as grounds for its motion." Thus, it is unclear what statutory ground Hillside is asserting for its motion.

**(a)** Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

**(b)** Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—

   **(1)** reinstates—

   **(A)** any proceeding or custodianship superseded under section 543 of this title;

   **(B)** any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under section 510(c)(2), 522(i)(2), or 551 of this title; and

   **(C)** any lien voided under section 506(d) of this title;

   **(2)** vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and

   **(3)** revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

The only provision in section 349 that mentions subsequent filings following a dismissal is section 349(a). Section 349(a) states that a dismissal does not bar the discharge of debts in subsequent petitions if those debts were dischargeable in a dismissed case. Section 349(a) also states that a dismissal does not prejudice a debtor with regard to the filing of a subsequent petition. Here, the issue is not dischargeability, nor is there a question of whether Leaver can file a subsequent petition. So section 349(a) is irrelevant.

Likewise, section 349(b)(1) is inapplicable to the present facts because the issue before this Court does not concern 11 U.S.C. § 543, an avoided transfer, or lien avoidance.

The next section, section 349(b)(2), states that unless a court for cause orders otherwise, a dismissal of a case vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of the Bankruptcy Code. In *Leaver I*, this Court ordered that Hillside is entitled to an administrative expense claim both for its post-petition expense claims as well as the portion of its claim relating to prepetition expenses that meet the requirements of 11 U.S.C. § 503(b). That order, however, was not an order, judgment, or transfer based on any of the enumerated subsections listed in section 349(b)(2). As a result, the order was not vacated when *Leaver I* was dismissed. Hillside argues that because the order was not vacated upon dismissal, this Court must extend its order to *Leaver II* and hold that Hillside is entitled to an administrative expense claim in the present bankruptcy proceeding.

That the order was not vacated upon the dismissal of *Leaver I* does not automatically entitle Hillside to an administrative priority claim in *Leaver II*. In this Court's *Leaver I* Decision, it held that Hillside was entitled to an administrative priority claim for post-petition expenses pursuant to section 503(b)(1)(A), as well as prepetition expenses that met the requirements of section 503(b). Section 503(b)(1)(A) of the Code allows for an administrative expense claim for the "actual, necessary costs and expenses of preserving *the estate*" (emphasis added). The plain language of this section makes it clear that

5

entitlement to an administrative expense claim under section 503(b)(1)(A) is connected to the bankruptcy estate of a particular case.

Likewise, section 503(b)(9), which Hillside is also now asserting an administrative expense claim under, allows for an administrative expense claim for "the value of any goods received by the debtor within 20 days before the date of commencement of *a case*" (emphasis added). The language of section 503(b)(9) is therefore also tethered to a particular bankruptcy filing. In other words, the administrative expense claims in *Leaver I* relate solely to the estate in *Leaver I*, not *Leaver II*. For that reason, this Court's previous decision was only about what Hillside was entitled to in *Leaver I*.

Had *Leaver I* not been dismissed, Hillside would have had a right to assert an administrative expense claim. But the final section of 349, section 349(b)(3), states that a dismissal "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title." So, when *Leaver I* was dismissed, the estate that was created in *Leaver I* went away and all the property of the estate became property of the Debtor again. And, when *Leaver II* was later filed, there was a new, distinct estate created.

Because administrative priority claims under section 503 are tied to the estate created in a particular bankruptcy case, Hillside must show that its administrative priority claims asserted in *Leaver II* relate solely to the estate in *Leaver II*. Hillside cannot do so, however, because the administrative priority

6

claims it is asserting stem from the *Leaver I* estate, an estate that has since revested in the debtor.

Case law supports this reasoning. The Seventh Circuit held in *In re Jartran, Inc.,* that to receive an administrative priority treatment for a claim in a subsequent bankruptcy filing, a creditor must demonstrate its claim is entitled to such treatment relative to that subsequent bankruptcy filing. *See* 886 F.2d 859, 870 (7th Cir. 1989) ("To receive an administrative priority in *Jartran II,* [Appellant] must demonstrate its claims relative to *Jartran II;* an administrative priority in *Jartran I* does not translate to an administrative priority in *Jartran II."*). Several cases that followed *In re Jartran* both in and out of the Seventh Circuit have cited and applied this holding.[3]

This Court therefore holds that any administrative claim Hillside may have been entitled to in *Leaver I* does not retain its administrative priority status in *Leaver II.* While Hillside may hold claims for post-petition expenses or expenses for goods received by the Debtor within 20 days before the commencement of *Leaver I,* such claims must be treated as general unsecured claims.

---

[3] *See, i.e., In re Conston, Inc.,* 181 B.R. 769, 781 (D. Del. 1995) ("[T]he bankruptcy created characteristic of priority does not exist beyond the bankruptcy case in which it was created; a § 507 priority, if it exists at all, must stem from the claim's characteristics extant in the current bankruptcy proceeding."; *see also In re Larsen,* 59 F.3d 783, 787 (8th Cir. 1995) ("Extending administrative expense priority to claims awarded in a different bankruptcy case furthers neither the purpose of preserving the Chapter 7 estate nor the overarching objective of creditor equality.").

### *Additional arguments presented by Hillside*

Hillside presents several other arguments to support its position that any administrative claim it may have been entitled to in *Leaver I* carries over to *Leaver II*. These other arguments all center on the belief that the preservation of Hillside's administrative claim in *Leaver I* would avoid inequitable results of dismissal. But none of these arguments are availing.

First, Hillside argues that failing to give Hillside an administrative priority claim leads to the unjust enrichment of Leaver and the estate. Hillside argues that because Debtor benefitted from "$119,000 worth of livestock," retention of this benefit without awarding Hillside administrative priority for its claim would be inequitable as Hillside has not received its benefit of the bargain. Hillside also points to a case from the Southern District of Georgia holding that one reason administrative expenses are awarded priority is to prevent the unjust enrichment of the bankruptcy estate. *See In re Sanjeev and Rajeev, Inc.*, 411 B.R. 480, 482 (Bankr. S.D. Ga. 2008).

Hillside's argument falls short. This Court never determined the amount of Hillside's claim that qualifies as an administrative priority claim. Thus is it unknown exactly what portion of Hillside's claim would have been entitled to administrative priority in *Leaver I*, and what portion would be a general unsecured claim that would receive general unsecured treatment. Based on filings in *Leaver I*, including the attachments to the Hillside proof of claim, the bulk of Hillside's claim is for prepetition expenses that would not qualify as administrative expense claims, and somewhere between $2,593.50 and

8

$4,882.50 would have been for post-petition or section 503(b)(9) claims. This Court is not holding that Hillside has no claim against Leaver. Subject to any further evidentiary hearing that may be necessary to determine the exact amount of Leaver's indebtedness to Hillside, Hillside is still a claimant in Leaver's bankruptcy. That does not, however, mean there is any administrative claim in this case.

Second, Hillside argues that because the parties agreed that any claim would be treated as an administrative priority claim in the Stipulation approved by this Court in *Leaver I*, this Court should not allow Debtor to unilaterally alter a stipulation through dismissal to the detriment of Hillside. This Court already addressed this argument in its *Leaver I* Decision. The Court held that the Stipulation between Leaver and Hillside "can be enforced only to the extent it comports with the Code." The Court then went on to find that the provision in the Stipulation agreeing that the *entirety* of Hillside's claim would be given administrative priority status conflicts with the Bankruptcy Code. For that reason, the Court found that Hillside was entitled to an administrative expense claim *only* for its post-petition expenses or any prepetition claim that met the requirements of section 503(b).

Third, Hillside believes that administrative expenses are appropriate here to fulfill the Congressional policy to preserve administrative claims in related bankruptcies. To support this argument, Hillside highlights the fact that when a Chapter 12 proceeding is converted to another chapter under the Code, administrative claims are preserved. But Hillside's comparison between a

9

dismissal and conversion is misplaced. A conversion of a case from one chapter of Title 11 to another is different from dismissal of a bankruptcy case and completely separate from the subsequent filing by the same debtor. Section 348 governs the effect of a conversion. It says nothing about the estate revesting in the debtor upon the conversion of a bankruptcy proceeding like it does in a dismissal. In a conversion, the estate carries over to the converted bankruptcy proceeding, and so logically it follows that administrative claims that are part of the initial bankruptcy estate would carry over as well. Such is not the case with a dismissal.

    Finally, Hillside urges this Court to use the discretionary and equitable powers afforded to it in sections 349 and 105(a) of the Code to rule for Hillside. A court's discretionary powers in section 349, however, are irrelevant when a dismissal has already been entered and a subsequent bankruptcy proceeding has been initiated. Further, this Court cannot use the equitable and discretionary powers afforded to it in section 105(a) to circumvent constraints on its authority contained within the Code. Section 105(a) states that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." This Court is bound by the effects of the dismissal of *Leaver I* pursuant to section 349 of the Code. This includes the fact that section 349(b)(3) revested the property of the *Leaver I* estate in the Debtor and that *Leaver II* created a new, distinct bankruptcy estate.

10

Hillside asserts that "[b]eing able to unilaterally relieve oneself of one's stipulated obligations supported by the Order would severally undermine creditor's assurances of doing business with an insolvent entity." But this argument fails to account for the facts that (1) there has been no allegation that Leaver's second filing was done in bad faith; (2) Hillside voluntarily relinquished its possessory lien; and (3) it was represented by counsel in entering into that Stipulation. Indeed, Hillside explicitly states in its reply brief that "Hillside does not argue bad faith." Thus, there is no evidence suggesting that the *only* reason why Debtor moved to dismiss *Leaver I* and refile was to avoid paying any administrative priority claim owed to Hillside. On the other hand, Debtor filed a motion to voluntarily dismiss its Chapter 12 saying it was due to Debtor's medical issues and that the dairy farm was "not viable in its current form." At the same time, secured creditor Wisconsin Bank & Trust had filed a motion to dismiss based on its belief the Debtor's Chapter 12 plan in *Leaver I* was not feasible. While the serial filings and, in particular, the filing of the present case a mere 28 days after dismissal of *Leaver I* is troubling, it does not change the application of either 11 U.S.C. § 349 or § 503.

## CONCLUSION

For these reasons, the Court finds that any administrative claim Hillside may have been entitled to in *Leaver I* does not retain its administrative priority status in *Leaver II.* For that reason, Hillside's Motion for Allowance of Administrative Expense Pursuant to 11 U.S.C. § 503(b)(3)(B) and (b)(9) is DENIED.

The amount of Hillside's claim is subject to further hearing and determination.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: May 26, 2022

BY THE COURT:

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge